UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

ALEXANDRIA DIVISION

| | |
|---|---|
| THOMAS RICHARDS,<br><br>                Plaintiff,<br><br>v.<br><br><br>AOL MEDIA LLC,<br><br>                Defendant. | Civil Action No. _____<br><br><br><br><br>Lisa Weingarten Richards, Esq.<br>VSB #96671<br>LWR Law Offices<br>3060 Williams Dr. Ste 300 #510<br>Fairfax, Virginia 22031<br>(202) 981-2059<br>LWR@LWRLawOffices.com<br>Counsel for Plaintiff |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**(With Application for Temporary Restraining Order)**

Plaintiff Thomas Richards, by counsel, brings this action against Defendant AOL Media LLC for violations of the Stored Communications Act and Electronic Communications Privacy Act, and violations of Virginia state law, and alleges as follows:

**PARTIES**

1. Plaintiff Thomas Richards is an individual and a citizen and resident of the Commonwealth of Virginia.

2. Defendant AOL Media LLC is a Delaware limited liability company with its principal place of business in New York, New York.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) because Plaintiff's claims arise under the Stored Communications Act, 18 U.S.C. §§ 2701-2712, and the Electronic Communications Privacy Act, 18 U.S.C. § 2511.

4. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they arise from the same nucleus of operative facts as the federal claims.

5. This Court has personal jurisdiction over Defendant because Defendant's Terms of Service provide that users consent to exclusive jurisdiction in Virginia state and federal courts, and because Defendant conducts substantial business in Virginia by providing email services to Virginia residents.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and the legacy AOL Terms of Service that govern Plaintiff's account, which provide that disputes "will be resolved by a state or federal court located in Arlington County, Fairfax County, the City of Alexandria, or Loudoun County, Virginia." Plaintiff never agreed to subsequent terms purporting to change the forum to New York.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Long-Standing Relationship with AOL

7. Plaintiff has maintained an AOL email account for approximately twenty-five years.

8. Plaintiff uses his AOL email address, travelingthrew@aol.com, for personal and ministry communications. For 25 years, Plaintiff has operated SpirituallySmart.com, a website dedicated to biblical scholarship and religious teaching. He also operates other related websites: tlthe5th.ai, septuagint-lxx.com.

9. Plaintiff's AOL email account contains twenty-five years of archived correspondence, including sensitive religious communications with individuals seeking spiritual guidance.

10. Plaintiff's AOL email address has become integral to his personal and professional identity. It is the contact address for his ministry, his professional relationships, and his personal correspondence.

B. *AOL's Prior Privacy Commitments*

11. Throughout Plaintiff's relationship with AOL, Defendant represented that it would protect the privacy of user communications.

12. AOL's 2017 Privacy Policy explicitly stated: "We do not read your private online communications without your consent." The legacy privacy policy was publicly accessible at https://privacy.aol.com/legacy/privacy-policy.1.html until approximately December 17-20, 2025, when Defendant blocked access to the page following service of this lawsuit. A true and correct copy of the prior Privacy Policy, as preserved by the Internet Archive's Wayback Machine, is attached hereto as Exhibit A. A PDF printout showing that the page now returns a "403 Forbidden" error is attached hereto as Exhibit B. The circumstances surrounding Defendant's blocking of this page are set forth in Plaintiff's contemporaneously filed Emergency Motion for Spoliation Sanctions.

13. In reliance on these representations, Plaintiff continued to use his AOL email account for sensitive personal and religious communications.

14. In May 2018, AOL's then-parent company Oath announced a unified Terms of Service and Privacy Policy for AOL and Yahoo users. According to Oath's own Frequently Asked Questions page, which remains published at https://legal.yahoo.com/us/en/yahoo/privacy/guce/faq/index.html, signed-in users were required to affirmatively agree to the new terms for them to become effective: "These changes take effect for signed-in users as soon as they agree. Until you agree your account will remain under the legacy AOL Terms and Privacy Policy or legacy Yahoo Terms and Privacy Policy."

15. Plaintiff never agreed to the 2018 unified Oath Terms of Service or Privacy Policy. Although Plaintiff received multiple notices prompting him to accept the new terms, he intentionally declined to do so each time. Plaintiff was never locked out of his account or prevented from accessing his email for refusing to accept the new terms. Pursuant to Oath's own stated policy, Plaintiff's account has remained governed by the legacy AOL Privacy Policy, which provides that "Oath does not read your private online communications without your consent."

16. For approximately seven years, AOL permitted Plaintiff to continue using his email account under the legacy privacy terms without requiring acceptance of the unified policy. The November 27, 2025 notice represents AOL's first attempt to actually force Plaintiff to accept terms authorizing the reading of his private communications. Under the notice, Plaintiff must either "agree" to the new terms by logging in after January 2, 2026, or lose access to his account entirely -- a coerced choice that is no choice at all.

**C. AOL's New Terms of Service and Privacy Policy**

17. On November 27, 2025 -- Thanksgiving Day -- Defendant notified Plaintiff and presumably also notified AOL's approximately 30 million other users that new Terms of Service and a new Privacy Policy would take effect on January 2, 2026.

18. Upon information and belief, Plaintiff has reason to suspect that Defendant may have accessed or disclosed his private email communications prior to any acceptance of the 2018 unified terms. Circumstantial evidence from unrelated litigation suggests that the contents of Plaintiff's private communications may have been made available to third parties. If Defendant has been reading, scanning, or disclosing Plaintiff's private communications without his consent, such conduct would violate the legacy AOL Privacy Policy that governs his account and would constitute violations of the Stored Communications Act and Electronic Communications Privacy Act.

19. If Defendant has in fact been scanning Plaintiff's emails since 2018 without authorization, Defendant has committed ongoing violations of the Stored Communications Act, the Electronic Communications Privacy Act, and its contractual obligations to Plaintiff under the legacy AOL Privacy Policy for approximately seven years.

20. The notification was sent on a major national holiday and buried in linked documents, in a manner calculated to minimize user awareness.

21. On November 27, 2025 -- the same day Defendant sent (and Plaintiff received) the notification -- Plaintiff's counsel filed a consumer complaint with the Virginia Attorney General regarding Defendant's new Terms of Service and Privacy Policy. That complaint remains pending with no response from the Attorney General's office.

22. Under the new Privacy Policy, Defendant claims a "legitimate interest" in reading and analyzing the content of users' private email communications. "Legitimate interest" under data protection frameworks means no user consent is required.

23. The new Privacy Policy authorizes Defendant to share users' email content with "AI Providers" and other third parties.

24. The new Privacy Policy authorizes Defendant to retain users' email content for up to ten years.

25. The new Privacy Policy explicitly states that Defendant may disclose users' email content to "public, judicial and/or police authorities" upon request.

26. The statement in AOL's prior Privacy Policy -- "We do not read your private online communications without your consent" -- has been removed from the new Privacy Policy.

### D. The Coercive "Choice" Imposed on Users

27. Under the new Terms of Service, users who do not wish to accept the new terms by January 2, 2026 have no option but to forfeit their email accounts.

28. Defendant's FAQ page states: "If you don't agree to the new Terms of Service, you'll need to close your AOL account before January 2, 2026."

29. Users who simply log into their AOL accounts after January 2, 2026 will be deemed to have accepted the new terms.

30. Plaintiff thus faces an impossible choice: (a) accept terms authorizing Defendant to read, analyze, and share his private religious communications with third parties and

law enforcement; or (b) forfeit the email address he has used for twenty-five years, along with all archived correspondence and his established digital identity.

31. This is not consent. It is coercion. The coercion is compounded by the fact that Plaintiff successfully declined to accept similar terms for seven years, only to now face an ultimatum threatening the loss of his entire account and digital identity.

### E. Defendant's Policies Facilitate Government Surveillance Without Constitutional Protections

32. Defendant's new Privacy Policy states that it retains email content for up to ten years and may disclose such content to "public, judicial and/or police authorities" based on its claimed "legitimate interest."

33. The Supreme Court has recognized that certain digital information reveals an intimate window into a person's life and associations, warranting Fourth Amendment protection even when held by third parties. See *Carpenter v. United States*, 585 U.S. 296, 311 (2018).

34. In *Carpenter*, the Court held that the government must obtain a warrant supported by probable cause before acquiring historical cell-site location information from wireless carriers. Id. at 316-317. The Court reasoned that such information "hold[s] for many Americans the 'privacies of life.'" *Id*. at 311 (quoting *Riley v. California*, 573 U.S. 373, 403 (2014)). Email content -- which reveals the actual substance of private thoughts and communications -- warrants at least equivalent protection.

35. Defendant's policy of pre-collecting, retaining, and making available users' private email content for law enforcement purposes -- without any warrant, probable cause, or judicial oversight -- threatens to render *Carpenter*'s protections meaningless.

36. The government cannot accomplish through private intermediaries what it is constitutionally prohibited from doing directly. *Cf. Norwood v. Harrison*, 413 U.S. 455, 465 (1973) (state may not induce, encourage, or promote private persons to accomplish what it is constitutionally forbidden to accomplish).

37. Upon information and belief, Defendant's policy changes are designed to facilitate government access to private communications while circumventing the constitutional warrant requirement.

38. Defendant's new Privacy Policy transforms AOL from an email service provider into a government surveillance apparatus.

39. By claiming "legitimate interest" as the basis for reading users' emails, Defendant is arrogating to itself the power to conduct warrantless searches of private communications.

40. By retaining email content for up to ten years specifically for potential disclosure to "public, judicial and/or police authorities," Defendant is acting as an agent of the government, pre-collecting evidence for law enforcement use.

41. The government could not lawfully require citizens to submit to warrantless searches of their private communications as a condition of using essential digital infrastructure. Defendant cannot accomplish through private contract what the government is constitutionally prohibited from doing directly.

42. Upon information and belief, Defendant's policy changes are designed to facilitate government access to private communications without the constitutional protections of the warrant requirement.

### F. Irreparable Harm and Imminent Deadline

43. The new Terms of Service and Privacy Policy take effect on January 2, 2026.

44. After that date, if Plaintiff logs into his AOL account, Defendant will deem him to have accepted the new terms and will begin reading and analyzing his private communications.

45. After that date, if Plaintiff does not wish to accept the new terms, Defendant instructs that he must close his AOL account before January 2, 2026. Either outcome -- forced acceptance of surveillance or forfeiture of his account -- causes irreparable harm that cannot be remedied by money damages. Once private communications are read, analyzed, and shared with third parties, that invasion of privacy cannot be undone. Once a twenty-five-year email account and digital identity are forfeited, they cannot be recreated.

## COUNT I

### Violation of the Stored Communications Act
### (18 U.S.C. §§ 2701-2712)

46. Plaintiff incorporates by reference all preceding paragraphs.

47. The Stored Communications Act, 18 U.S.C. § 2702(a)(1), prohibits a provider of electronic communication service to the public from knowingly divulging to any person or entity the contents of a communication while in electronic storage by that service.

48. Defendant is a provider of electronic communication service to the public within the meaning of 18 U.S.C. § 2702(a)(1).

49. Plaintiff's emails stored on Defendant's servers are communications in electronic storage within the meaning of 18 U.S.C. § 2510(17).

50. Defendant's new Privacy Policy authorizes Defendant to knowingly divulge the contents of Plaintiff's stored communications to third parties, including "AI Providers," without Plaintiff's lawful consent.

51. The Stored Communications Act, 18 U.S.C. § 2702(a)(3), prohibits a provider of electronic communication service from knowingly divulging a record or other information pertaining to a subscriber to any governmental entity, except as specifically authorized by statute.

52. Defendant's new Privacy Policy authorizes Defendant to retain Plaintiff's communications for up to ten years and to disclose those communications to "public, judicial and/or police authorities" -- i.e., governmental entities -- without the legal process required by 18 U.S.C. § 2703.

53. Although 18 U.S.C. § 2702(b)(3) permits disclosure with "the lawful consent of the originator or an addressee or intended recipient," consent obtained through coercion is not lawful consent. Defendant's threat to terminate Plaintiff's twenty-five-year email account if he does not accept the new terms constitutes coercion that vitiates any purported consent.

54. Defendant's conduct constitutes a knowing and intentional violation of the Stored Communications Act.

55. Pursuant to 18 U.S.C. § 2707, Plaintiff is entitled to preliminary and permanent injunctive relief, actual damages or statutory damages of not less than $1,000, punitive damages, and reasonable attorney's fees and litigation costs.

56. Upon information and belief, Defendant may have already violated the Stored Communications Act by scanning and disclosing Plaintiff's stored communications without lawful consent since approximately 2018. Plaintiff is entitled to damages for any past violations in addition to injunctive relief preventing future violations.

## COUNT II

### Violation of the Electronic Communications Privacy Act
### (18 U.S.C. § 2511)

57. Plaintiff incorporates by reference all preceding paragraphs.

58. The Electronic Communications Privacy Act, 18 U.S.C. § 2511(1), prohibits any person from intentionally intercepting or endeavoring to intercept any wire, oral, or electronic communication, or from intentionally disclosing the contents of any wire, oral, or electronic communication knowing that the information was obtained through interception.

59. Defendant's new Privacy Policy authorizes Defendant to read and analyze the contents of Plaintiff's email communications under the guise of "legitimate interest" -- without Plaintiff's consent and in the ordinary course of Defendant's business operations.

60. Defendant's systematic reading and analysis of email content, and subsequent disclosure to "AI Providers" and other third parties, constitutes interception and disclosure of electronic communications in violation of 18 U.S.C. § 2511.

61. Although 18 U.S.C. § 2511(2)(d) permits interception where one party to the communication has given prior consent, consent obtained through coercion is not valid consent. Defendant's threat to terminate Plaintiff's account if he does not accept the new terms vitiates any purported consent.

62. Defendant's conduct constitutes an intentional violation of the Electronic Communications Privacy Act.

63. Pursuant to 18 U.S.C. § 2520, Plaintiff is entitled to preliminary and permanent injunctive relief, actual damages or statutory damages, punitive damages, and reasonable attorney's fees and litigation costs.

64. Upon information and belief, Defendant may have already violated the Electronic Communications Privacy Act by intercepting and disclosing Plaintiff's electronic communications without valid consent since approximately 2018. Plaintiff is entitled to damages for any such past violations in addition to injunctive relief preventing future violations.

## COUNT III

### Breach of Implied Covenant of Good Faith and Fair Dealing
### (Virginia Common Law)

65. Plaintiff incorporates by reference all preceding paragraphs.

66. Virginia law implies a covenant of good faith and fair dealing in every contract.

67. Plaintiff and Defendant entered into a contract for email services, governed by Defendant's Terms of Service and Privacy Policy.

68. Defendant's prior Privacy Policy explicitly promised: "We do not read your private online communications without your consent."

69. Defendant breached the implied covenant of good faith and fair dealing by: (a) unilaterally and materially changing the fundamental terms of the parties' agreement; (b) eliminating the core privacy protections that induced Plaintiff to use and continue using Defendant's services; (c) timing the notice to minimize user awareness; and (d) structuring the "choice" to coerce acceptance.

70. Plaintiff has been damaged by Defendant's breach and is entitled to declaratory and injunctive relief.

## COUNT IV

### Unconscionability
### (Virginia Common Law)

71. Plaintiff incorporates by reference all preceding paragraphs.

72. Virginia law permits courts to refuse to enforce unconscionable contract terms.

73. The new Terms of Service and Privacy Policy are procedurally unconscionable because: (a) they were presented on a take-it-or-leave-it basis with no opportunity for negotiation; (b) notice was provided on a major holiday in a manner calculated to

minimize awareness; (c) acceptance is deemed to occur simply by logging in; and (d) users have no meaningful choice given their reliance on established email accounts.

74. The new Terms of Service and Privacy Policy are substantively unconscionable because: (a) they authorize Defendant to read users' private communications without meaningful consent; (b) they authorize Defendant to share private communications with unknown third parties; (c) they impose a ten-year retention period for law enforcement access; and (d) they strip users of privacy rights that Virginia law deems contrary to public policy to waive. See Va. Code § 59.1-578(B).

75. Plaintiff is entitled to a declaration that the new Terms of Service and Privacy Policy are unconscionable and unenforceable.

### COUNT V

**Violation of the Virginia Consumer Protection Act**
**(Va. Code § 59.1-196 et seq.)**

76. Plaintiff incorporates by reference all preceding paragraphs.

77. The Virginia Consumer Protection Act prohibits "fraudulent acts or practices" in consumer transactions. Va. Code § 59.1-200(A).

78. Plaintiff is a "consumer" and Defendant is a "supplier" within the meaning of the VCPA.

79. Defendant engaged in fraudulent acts or practices by: (a) inducing Plaintiff to rely on privacy representations that Defendant now seeks to eliminate; (b) timing the notice of material changes to minimize consumer awareness; (c) structuring the terms to coerce acceptance through threat of account forfeiture; and (d) claiming "legitimate

interest" as a basis for reading private communications when no legitimate interest exists.

80. Plaintiff has suffered ascertainable loss as a result of Defendant's violations.

81. Plaintiff is entitled to declaratory and injunctive relief, actual damages, and reasonable attorney's fees pursuant to Va. Code § 59.1-204.

## COUNT VI

### Promissory Estoppel
### (Virginia Common Law)

82. Plaintiff incorporates by reference all preceding paragraphs.

83. Defendant made a clear and definite promise that it would not read Plaintiff's private communications without his consent.

84. Defendant should reasonably have expected Plaintiff to rely on this promise in continuing to use Defendant's email services for sensitive personal and religious communications.

85. Plaintiff did in fact rely on this promise to his detriment by using his AOL email account for twenty-five years, building his personal and professional identity around that email address, and storing sensitive correspondence in that account.

86. Injustice can only be avoided by enforcing Defendant's promise.

87. Plaintiff is entitled to declaratory and injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Issue a temporary restraining order and preliminary injunction prohibiting Defendant from implementing the new Terms of Service and Privacy Policy as to Plaintiff pending resolution of this action;

B. Issue a permanent injunction prohibiting Defendant from reading, analyzing, or sharing Plaintiff's private email communications without his express consent;

C. Declare that the new Terms of Service and Privacy Policy violate the Stored Communications Act, 18 U.S.C. §§ 2701-2712;

D. Declare that the new Terms of Service and Privacy Policy violate the Electronic Communications Privacy Act, 18 U.S.C. § 2511;

E. Declare that the new Terms of Service and Privacy Policy are unconscionable and unenforceable;

F. Declare that the new Terms of Service and Privacy Policy violate the Virginia Consumer Protection Act;

G. Award Plaintiff statutory damages pursuant to 18 U.S.C. § 2707 and 18 U.S.C. § 2520 for Defendant's past and ongoing violations;

H. Award Plaintiff actual damages for harm caused by Defendant's unauthorized scanning and disclosure of Plaintiff's private communications;

I. Award Plaintiff punitive damages;

J. Award Plaintiff his reasonable attorney's fees and costs pursuant to 18 U.S.C. § 2707, 18 U.S.C. § 2520, and Va. Code § 59.1-204;

K. Award Plaintiff such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

                                                Respectfully submitted,

                                                /s/ Lisa Weingarten Richards
                                                Lisa Weingarten Richards, Esq.
                                                Virginia State Bar No. 96671
                                                LWR Law Offices
                                                3060 Williams Dr. Ste 300 #510
                                                Fairfax, Virginia 22031
                                                (202) 981-2059
                                                LWR@LWRLawOffices.com
                                                Counsel for Plaintiff

Dated: December 23, 2025