**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| THOMAS RICHARDS,<br><br>*Plaintiff*,<br><br>v.<br><br>AOL MEDIA LLC,<br><br>*Defendant*. | Case No: 1:25CV02448 (PTG/IDD) |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Defendant AOL Media LLC ("AOL"), pursuant to L. Civ. R. 7(F), submits this opposition to the motion for preliminary injunction filed by Plaintiff Thomas Richards ("Richards").

## INTRODUCTION

Richards filed this complaint—as well as his prior complaint in Loudoun County Circuit Court—because he does not want his email service provider reading his emails.[1] The problem he faces is that he consented to terms of service ("TOS") and a privacy policy that allow the provider to do just that. For his part, Richards repeatedly says that he did not agree to this version of the TOS and privacy policy. But his assertion is contradicted by AOL's records, which establish that

[1] In the last three years, Richards and his wife, who is an attorney, have filed at least 15 cases in Virginia's state and federal courts. *See Richards v. AOL Media LLC*, No. 1:25CV2448 (E.D. Va.); *Richards v. Block, Inc.*, No. 5:25CV137 (W.D. Va.); *Richards v. Chatbase.co*, 5:25CV122 (W.D. Va.); *Richards v. Kirkman*, 5:25CV89 (W.D. Va.); *Richards v. Google LLC*, 5:25CV82 (W.D. Va.); *Richards v. Citizens Fin. Grp.*, 5:24CV73 (W.D. Va.); *Richards v. X. Corp.*, 5:24CV39 (W.D. Va.); *Richards v. X. Corp.*, 5:24CV34 (W.D. Va.); *Richards v. AOL Media LLC*, No. CL25008424 (Loudoun County Circuit Court); *Richards v. Winchester Med. Ctr.*, No. CL24000284 (Frederick County Circuit Court); *Richards v. Instacart*, No. CL24000221 (Frederick County Circuit Court); *Richards v. Magic Jump*, No. CL24000213 (Frederick County Circuit Court); *Richards v. Amazon.com*, CL 24000214 (Frederick County Circuit Court); *Richards v. Peng Chow*, CL23000422 (Frederick County Circuit Court); and *Richards v. Alley Pool & Spa*, No. CL23000113 (Frederick County Circuit Court).

Richards affirmatively accepted the new TOS and privacy policy on April 11, 2019, at 2:58 p.m. UTC time. Under that version of the privacy policy, Richards authorized the provider to "analyze[] and store[] all communications content, including email content from incoming and outgoing mail," and to "[c]reate analytics and reports for external parties, including partners, publishers, advertisers, apps, third-parties and the public," among other things. AOL could only analyze Richards' email content with his consent, which AOL indisputably obtained.

Richards' consent to these terms is dispositive of his complaint. His two federal claims under the Stored Communications Act and the Electronic Communications Privacy Act fail because he authorized the email provider to read and disclose his emails. Likewise, Richards' contract claim fails because the provider had the express right to read and disclose Richards' emails. Finally, Richards cannot complain about the supposed unconscionability and allegedly deceptive nature of the newest TOS when he voluntarily operated under substantively identical terms for years. Without a likelihood of succeeding on the merits, Richards cannot obtain preliminary injunctive relief.

Nor can Richards satisfy the other three elements for a preliminary injunction. He will not suffer irreparable harm in the absence of preliminary relief, because he specifically claims that the provider has been reading his emails "since approximately 2018." In any event, the alleged harm cannot be irreparable because Richards has continued to send and receive emails through his account, despite his alleged knowledge that AOL has purportedly been reading and disclosing those emails. Moreover, the balance of equities favors AOL, because Richards can simply turn off the email-scanning functionality through the privacy toggles in his account. Finally, the public interest is necessarily served by a judicial decision that upholds AOL's contractual rights and maintains the alleged status quo.

However, there are two threshold reasons why the Court should not address Richards' request for preliminary relief under the four-factor test. First, AOL is not subject to personal jurisdiction in Virginia. Richards' own allegations (and the attached declaration) show that AOL is a Delaware company headquartered in New York, with no claim-related connections to Virginia. Moreover, Richards cannot rely on a Virginia forum-selection clause from an earlier version of the TOS that was superseded by the version he agreed to in 2019. Second, the Court should abstain from any ruling because Richards' request for preliminary relief is already pending in the first-filed action in the Loudoun County Circuit Court. Under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), the Court should not adjudicate this second-filed action until the first-filed state court action is adjudicated.

## ARGUMENT

### I. AOL Is Not Subject to Personal Jurisdiction in Virginia.

The Court cannot rule on Richards' motion because it lacks personal jurisdiction over AOL. *See, e.g.*, *Thomas v. Cadence Capital Inv. LLC*, No. 2:22CV7944, 2022 WL 19076794, at *2 (C.D. Cal. Nov. 3, 2022) ("As a threshold matter, a district court lacks authority to grant relief in the form of a temporary restraining order or preliminary injunction where it has no jurisdiction over the parties."). "There are two types of personal jurisdiction: general and specific." *New Venture Holdings, LLC v. DeVito Verdi, Inc.*, 376 F. Supp. 3d 683, 690 (E.D. Va. 2019). "Plaintiffs bear the burden of proving that personal jurisdiction exists by a preponderance of the evidence." *Selke v. Germanwings GmbH*, 261 F. Supp. 3d 645, 651 (E.D. Va. 2017). Here, Richards fails to offer any allegations or evidence that AOL is subject to either general or specific personal jurisdiction in Virginia.

For general personal jurisdiction to apply, "a corporation may be fairly regarded as at home in the forum where it is incorporated and the forum where it has its principal place of business." *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 133 (4th Cir. 2020); *see also Gamboa v. Great Lakes Dredge & Dock Co., LLC*, No. 20-18-JWD, 2020 WL 4373111, at *4 (M.D. La. July 30, 2020) (recognizing that the Supreme Court of the United States applied the same test to an LLC in *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014)). As Richards concedes, "Defendant AOL Media LLC is a Delaware limited liability company with its principal place of business in New York, New York." ECF 1 ¶ 2; *see also* Exhibit 2 ¶ 6. Therefore, general personal jurisdiction cannot apply to AOL.

For specific personal jurisdiction to apply, "the suit must arise out of or relate to the defendant's contacts with the forum." *Fidrych*, 952 F.3d at 138 (quoting *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 582 U.S. 255, 262 (2017)) (emphasis omitted). Richards alleges that AOL sent him and "approximately 30 million other users" the new TOS that would apply to AOL email accounts. ECF 1 ¶ 17. Because Richards concedes that this alleged communication was not specifically targeted at him in Virginia, it cannot form the basis for specific personal jurisdiction. *See Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 321-22 (5th Cir. 2021) ("To target every user everywhere . . . is to target no place at all.").

Finally, Richards relies on a supposed forum-selection clause from a version of the TOS that was last updated in June 2017, which allegedly provides that disputes "will be resolved by a state or federal court located in Arlington County, Fairfax County, the City of Alexandria, or Loudoun County, Virginia." ECF 1 ¶ 6. Notably, Richards fails to attach the version of the TOS that supposedly contains this forum-selection clause. Regardless, AOL was not created until 2023 and thus did not even exist when this version was last updated in 2017, which means that AOL

cannot be subject to the Virginia forum-selection clause. More importantly, Richards agreed to a subsequent version of the TOS that designates New York as the exclusive venue for disputes. The facts establishing Richards' consent to the later version of the TOS are set forth in the attached declarations.[2] Exhibits 1 & 2.

Without general personal jurisdiction, specific personal jurisdiction, or an applicable Virginia forum-selection clause, this case must be dismissed.

## II. The Court Should Abstain Under *Colorado River*.

The Court should also abstain from adjudicating this action—including Richards' preliminary injunction motion—in favor of Richards' parallel Loudoun County action, which also includes a pending motion for preliminary injunction.[3]

Under *Colorado River*, district courts have discretion to abstain "in favor of ongoing, parallel state proceedings where considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation clearly favor abstention." *Ackerman v. ExxonMobil Corp.*, 734 F.3d 237, 248 (4th Cir. 2013) (quotation marks omitted). In exercising this discretion, the Court should consider: "(1) whether the subject matter of the litigation involves property where the first court may assume jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceedings to protect the parties' rights."

[2] On a motion to dismiss for lack of personal jurisdiction, "the Court may consider affidavits and other extrinsic evidence[.]" *Creekmore v. United States*, No. 2:08CV235, 2008 WL 11346470, at *1 (E.D. Va. June 23, 2008).

[3] According to the declaration of Richards' own attorney, the Loudoun County action "arises from the same facts and alleges similar claims" as this parallel federal action. ECF 6-1 ¶ 8.

*Cartograf USA, Inc. v. Choate Const. Co.*, No. 3:22CV632, 2023 WL 2843791, at *4-5 (E.D. Va. Apr. 7, 2023). Critically, courts in this circuit apply a seventh factor that asks, "whether the later-filed lawsuit is reactive or vexatious." *Alami v. Lincoln Prop. Co.*, 61 F. Supp. 3d 551, 560 (E.D. Va. 2014).

Under the first factor, in cases not involving real property rights, the Fourth Circuit looks to whether the state court would have "jurisdiction over the arbitration award" and whether there is a "potentiality for conflicting decisions regarding the arbitration award." *Vulcan Chem. Tech., Inc. v. Barker*, 297 F.3d 332, 341 (4th Cir. 2002). Here, AOL moved to compel arbitration in the Loudoun County case. If granted, that court will stay the judicial proceedings so that it can maintain jurisdiction over the ultimate arbitration award. Moreover, if arbitration is granted in both the Loudoun County case and this one, there could be conflicting decisions, as in *Vulcan*. "In these circumstances, the first *Colorado River* factor is applied to favor abstention." *Id.* at 341.

Where, as here, both the federal and state forums are equally convenient, the second factor is "inconsequential." *Cartograf*, 2023 WL 2843791 at *6. From a convenience standpoint, there is no meaningful difference between litigating in Loudoun versus Alexandria. Therefore, this factor is not relevant to the analysis.

The third factor—avoiding piecemeal litigation—weighs heavily in favor of abstention. "When addressing this factor a court may consider whether all claims can be properly adjudicated in the state and federal forums and whether all parties are amenable to process. . . . In other words, can either the state or federal forum resolve the entire dispute between all interested parties so that litigation in different courts will be unnecessary to conclude the conflict?" *Jackson Hewitt, Inc. v. J2 Fin. Svcs., Inc.*, 901 F. Supp. 1061, 1067 (E.D. Va. 1995). AOL has already appeared

in the Loudoun County case, which means that court can "resolve the entire dispute between all interested parties." *Id.*

As to the fourth factor, Richards filed the Loudoun County action before he filed this federal action. AOL already filed responsive pleadings in the Loudoun County action on January 7. Moreover, Richards has already appealed a decision from the Loudoun County Circuit Court to the Supreme Court of Virginia. Therefore, the fourth factor favors abstention.

As to the fifth factor, two-thirds of Richards' claims arise under Virginia state law. Moreover, if the Court finds that Richards consented to the 2018 version of the TOS, the only two federal claims that he added in this case to obtain federal jurisdiction will be eliminated. Therefore, state law predominates over federal law in this action.

The sixth factor also favors abstention. The Loudoun County Circuit Court is more than capable of fairly and efficiently adjudicating Richards' claims. Indeed, Richards has asserted four of his six claims in that action, and he could simply amend his Loudoun County complaint to add the two additional claims asserted here.

Finally, the Court must also consider "whether the later-filed lawsuit is reactive or vexatious." *Baseline Sports, Inc. v. Third Base Sports*, 341 F. Supp. 2d 605, 608 (E.D. Va. 2004). This occurs where a plaintiff subsequently files a federal action only to "sidestep" the authority of the state court in the first-filed action. *Holland v. Hay*, 840 F. Supp. 1091, 1102 (E.D. Va. 1994). That is plainly the case here. On December 17, Richards filed his complaint in Loudoun County, along with a request for an emergency hearing. The Loudoun Circuit Court immediately denied Richards' emergency request. Richards then filed a motion for reconsideration, which the Loudoun Circuit Court also immediately denied on December 22. *The following day*, on December 23, Richards filed this action in federal court, once again seeking an emergency

hearing. These circumstances show that Richards is engaged in procedural fencing, and that his federal action is merely reactive to the unfavorable rulings he obtained in state court.

## III. Richards Fails to Satisfy His Burden of Proving Each of the Four Factors for Preliminary Relief.

If the Court finds jurisdiction and declines to abstain, it should nonetheless deny Richards' request for preliminary relief. "[P]reliminary injunctions are extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001). "To obtain a preliminary injunction, a party must show: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in the party's favor; and (4) an injunction is in the public interest." *N. Va. Hemp & Agriculture, LLC v. Virginia*, 125 F.4th 472, 492 (4th Cir. 2025). Critically, "*each* of these four factors must be satisfied to obtain preliminary injunctive relief," and it is "unnecessary to address all four factors when one or more ha[s] not been satisfied." *Henderson for NLRB v. Bluefield Hosp. Co., LLC*, 902 F.3d 432, 439 (4th Cir. 2018) (emphasis in original). Richards cannot satisfy *any* of the four factors, let alone all of them, to obtain the extraordinary relief he seeks.

### A. Richards is not likely to succeed on the merits.

Richards cannot prove the first factor that he is likely to succeed on the merits. AOL set forth its legal arguments in its motion to dismiss, and those same arguments are incorporated as if fully restated here. In addition, the fact that Richards agreed to the updated TOS and privacy policy in 2019 defeats his claims.

The attached declarations establish that Richards authorized the email service provider to read his emails and share them with third parties. Exhibits 1 & 2. Chris Brunschweiger, a member of AOL's customer relations team, states that the account management tool ("AMT") for

Richards' email account confirms that Richards agreed to the updated TOS and incorporated privacy policy on April 11, 2019. Exhibit 1 ¶¶ 18-20. On top of that, AOL's vice president, Robert Gurwin, confirmed that Richards must have affirmatively clicked the "I Accept" button on the updated TOS in order for the AMT records to show his consent. Exhibit 2 ¶¶ 11-13.

By consenting to the updated TOS and incorporated privacy policy, Richards expressly authorized the email service provider to "analyze[] and store[] all communications content, including email content from incoming and outgoing mail," and to "[c]reate analytics and reports for external parties, including partners, publishers, advertisers, apps, third-parties and the public," among other things. Exhibit 1 ¶ 15. This express authorization is dispositive of Richards' claims.

As to Counts I and II, Richards cannot succeed on his claims under the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701, *et seq.*, or the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2511, *et seq*. The SCA only applies to the accessing of emails "without authorization." 18 U.S.C. § 2701(a)(1). Moreover, 18 U.S.C. § 2701(c) carves out conduct that is "authorized . . . by a user of that [electronic communications service] with respect to a communication of or intended for that user[.]" The SCA also allows email service providers to disclose users' emails "with the lawful consent of the originator[.]" 18 U.S.C. § 2702(b)(3). Similarly, the ECPA allows email service providers, like AOL, to disclose users' emails "with the lawful consent of the originator[.]" 18 U.S.C. § 2511(b)(ii). And 18 U.S.C. § 2511(2)(d) allows providers to "intercept" users' emails "where one of the parties to the communication has given prior consent to such interception[.]" Having established Richards'

authorization in the updated TOS and privacy policy, *see supra*, there can be no liability under either of the federal statutes.[4]

Nor can there be liability for Count III under the implied covenant of good faith and fair dealing. "[W]hen parties to a contract create valid and binding rights, an implied covenant of good faith and fair dealing is inapplicable to those rights." *Ward's Equip., Inc. v. New Holland N. Am., Inc.*, 254 Va. 379, 385 (1997). Because Richards granted the provider the express right to read and disclose his emails, *see supra*, he cannot succeed on a claim for breach of the implied covenant.

Richards is also unlikely to succeed on his unconscionability claim in Count IV. Richards cannot complain about the substantive unconscionability of the newest version of the TOS when he expressly agreed to substantively similar terms in 2019. *See supra*. Richards also complains that his notice of the newest TOS was procedurally unconscionable because it was supposedly sent to him on Thanksgiving Day to "minimize awareness." ECF 1 ¶¶ 17, 73. But not only was Richards aware of the notice as soon as it was sent, he alleges that he filed a consumer complaint the very same day. *Id.* ¶ 21. Nor can Richards complain about the nature of the contractual consent. Even the version of the TOS that he relies on included the provision that: "Your continued use of or subscription to a Service after the effective date of any changes means that you agree to the changes." Exhibit 1 ¶ 11. That same version also provided that: "If you do not agree to the changes, stop using our Services[.]" *Id.* The fact that Richards was fine with these terms in 2017 and in subsequent versions undermines his sudden claim of procedural unfairness.

[4] If the federal claims are dismissed, the Court should also dismiss the rest of the action for lack of subject matter jurisdiction, as Richards does not allege the requirements for diversity jurisdiction.

As to Count V, Richards' claim under the Virginia Consumer Protection Act ("VCPA"), Va. Code §§ 59.1-196, *et seq.*, should be summarily dismissed because he fails to identify which, if any, of the 86 prohibited practices that AOL supposedly committed, or any of the facts about how AOL committed such unspecified violations. *See* Va. Code § 59.1-200(A)(1)-(86). Until Richards provides AOL (and the Court) with fair notice of these facts and claim, he cannot be allowed to proceed with Count V.

Finally, Richards cannot succeed on his claim for promissory estoppel in Count VI. "It is undisputed that Virginia does not recognize the doctrine of promissory estoppel." *Alami*, 61 F. Supp. 3d at 560 (citing *Nguyen v. CAN Corp.*, 44 F.3d 234, 241 (4th Cir. 1995)).

**B. Richards will not suffer irreparable harm.**

Richards cannot prove the second factor of irreparable harm, because he has continued to send and receive emails through his AOL account. Richards claims that AOL has been scanning and disclosing his emails "without lawful consent since approximately 2018." ECF 1 ¶ 56. Despite this purported knowledge, Richards has continued to use his AOL email account to send and receive emails. *Id.* ¶¶ 13, 16; *see also* Exhibit 1 ¶ 19. In analogous circumstances, at least one court has found no irreparable harm and denied a preliminary injunction. *See Dunbar v. Google, Inc.*, No. 5:10CV194, 2011 WL 12906350, at *4 (E.D. Tex. May 25, 2011) ("Plaintiff continues to send e-mail messages to Gmail users even after the filing of the above-captioned case, which weighs against Plaintiff's argument that harm going forward will be irreparable. In other words, Plaintiff's ongoing communications with Gmail users demonstrate that the harm can be addressed by damages because if the harm of such communications were truly irreparable, presumably Plaintiff would use a different mode of communication instead. Plaintiff has thus failed to show that denial of a preliminary injunction would irreparably harm Plaintiff.").

**C. The balance of the equities favors AOL.**

Richards cannot prove the third factor that the balance of the equities weighs in his favor. As established in the declaration of Robert Gurwin, Exhibit 2 ¶¶ 14-20, Richards can simply turn off email-scanning by clicking the relevant privacy toggles in his account. Critically, Richards' own filings show that he was, or should have been, aware of this feature. At a minimum, he is aware of it now because AOL's counsel provided him detailed instructions about it as of January 7, 2026. Exhibit 3. Indeed, according to Richards' attorney, Richards has since "disabled the automated email analysis toggles," which seriously calls into doubt the need for this motion.

On December 30, 2025, Richards filed the most recent privacy policy at ECF 13-1. Page 9 of that document provides: "Where we rely on your consent to process your personal data, *providing your personal data is optional, and you have the right to withdraw your consent at any time*. If you choose not to provide your personal data, you will still be able to enjoy our Services." ECF 13-1 at 9 (emphasis added). The document reiterates that same point pages later where, in the "Your Rights" section, it informs users (again): "Where we rely on your consent to process personal data, *you have the right to withdraw your consent*[.]" *Id.* at 11. The same policy even pointed Richards to the exact location where he could exercise these rights within his account: "To contact us and exercise your rights, please visit your privacy dashboard, which you can access here." *Id.* Nevertheless, AOL's records indicate Richards never attempted to contact AOL or otherwise exercise these rights regarding his personal data.

In addition, the 2017 version of the TOS, which Richards says he agreed to, contained similar disclosures. That version advised Richards that: "you can visit AOL Marketing Preferences to review your marketing preferences and make choices about how your information may be used to provide marketing offers to you." ECF 6-3 at 5. Additionally, Richards was

aware that he could: "Visit our Advertising, Analytics and Privacy page to learn more about your choices related to use of your information for online advertising." *Id.*

Finally, on January 7, 2026, counsel for AOL provided detailed, step-by-step instructions for Richards to turn off email scanning within his account. Exhibit 3. In that communication, AOL's counsel stated: "Mr. Richards has the ability to turn off email scanning within the privacy dashboard in his account. Here are the steps: 1. Navigate to 'Privacy Controls' either through the Privacy Policy footer link of AOL's webpage or from the Settings and Privacy link within the email account. 2. On the 'Privacy Controls' webpage, click the box called 'Automated email analysis.' 3. Once you click that box, you will see three toggles. Turn all three to the 'OFF' position." *Id.*

Given all this, Richards should never have filed this action or his motion for emergency relief in the first instance. Now, however, there is no dispute that his request for preliminary injunction is moot. The balance of the equities strongly favors AOL.

**D. A preliminary injunction is not in the public interest.**

Richards cannot prove the fourth factor that a preliminary injunction is in the public interest. As discussed, AOL has a contractual right to scan Richards' emails and disclose the contents to third parties. Exhibit 1. Upholding this contractual right by denying the preliminary injunction serves the public interest. *See, e.g.*, *Wickapogue 1 LLC v. Blue Castle (Cayman) Ltd.*, 657 F. Supp. 3d 234, 243 (E.D.N.Y. 2023) ("The Court finds that the denial of a preliminary injunction serves the public interest by holding the parties to their contractual obligations."). Moreover, according to Richards' own allegations, a preliminary injunction that prevents AOL from scanning and disclosing his emails would, as alleged, disrupt the status quo. ECF 1 ¶ 44 (alleging that AOL "will begin reading and analyzing [Richards'] private communications" as of

January 2, 2026); *id.* ¶ 64 (alleging that AOL may have been scanning and disclosing Richards' emails "since approximately 2018"). Regardless of which of Richards' internally inconsistent allegations is true—that scanning will begin in 2026 or has been ongoing since 2018—the requested injunction would alter the status quo by either halting years of ongoing conduct or preventing future conduct permitted under the existing policy. Preliminary injunctions that alter the status quo are contrary to the public interest. *See, e.g.*, *Roden v. Floyd*, No. 2:16CV11208, 2018 WL 6816162, at *6 (E.D. Mich. Nov. 13, 2018) ("Because Plaintiff's requested relief would alter the status quo, the public interest is not served by granting the request for preliminary injunctive relief.").

**CONCLUSION**

For the reasons discussed, the Court should deny Richards' motion for preliminary injunction.

Dated: January 12, 2026

Respectfully submitted,

**AOL MEDIA LLC**
*By Counsel*

*/s/ Brooks H. Spears*

Brooks H. Spears (VSB No. 86391)
Zachary J. Poretz (VSB No. 99508)
**MCGUIREWOODS LLP**
1750 Tysons Boulevard, Suite 1800
Tysons Corner, VA 22102
T: (703) 712-5132
F: (703) 712-5252
bspears@mcguirewoods.com
zporetz@mcguirewoods.com

**CERTIFICATE OF SERVICE**

I certify that, on January 12, 2026, I caused the foregoing to be served via the Court's electronic filing system, which will send notice to all counsel of record.

*/s/ Brooks H. Spears*