**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| THOMAS RICHARDS,<br><br>*Plaintiff*,<br><br>v.<br><br>AOL MEDIA LLC,<br><br>*Defendant*. | Case No: 1:25CV2448 (PTG/IDD) |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant AOL Media LLC ("AOL"), pursuant to L. Civ. R. 7(F), submits this reply brief in support of its motion to dismiss the complaint filed by Plaintiff Thomas Richards ("Richards").

## INTRODUCTION

Richards underscores the deficiency of his pleading by using his opposition brief to backfill the complaint with new facts—some of which did not even occur until *after* he filed the complaint. The Court cannot consider these new facts under Fed. R. Civ. P. 12(b)(6) and is instead confined to the four corners of Richards' pleading. Even these new allegations, however, do not cure the problems with Richards' complaint. Chief among them is that Richards continued to use his email account after receiving notice of the updated terms and conditions, which, under black-letter law, manifested his assent. But the Court need not address Richards' individual claims, because the Court lacks personal jurisdiction over AOL and lacks subject-matter jurisdiction due to the absence of the redressability component of standing. Alternatively, the Court should abstain in favor of the admittedly parallel action that Richards filed in Loudoun County Circuit Court before he filed this action.

## ARGUMENT

### I. The Undisputed Facts Preclude the Court from Exercising Personal Jurisdiction Over AOL.

#### A. Richards cannot rely on the Virginia forum-selection clause from the 2017 version because he indisputably assented to the 2018 version.

Although Richards focuses exclusively on whether he clicked the "I Accept" button for the 2018 version of the terms and conditions, he ignores the undisputed fact that he manifested his assent to that version by continuing to use his email account. Richards admits that he "received multiple notices from AOL beginning in or around 2018 prompting [him] to accept new unified Terms of Service and Privacy Policy." ECF 3 ¶ 17. And he admits that he continued to use his AOL email account after the 2018 version took effect. ECF 3 ¶ 17. These admissions are dispositive, because they indisputably prove Richards' assent.

The 2018 version provides that, "[b]y using the Services, you agree to these terms," ECF 20-2 at 2, and that "your continued use of or subscription to a Service after the effective date of any modifications to the Terms [] means that you agree to the Terms as modified," *id.* at 14; *see also* ECF 20-1 at 10 (2017 version providing that "[y]our continued use of or subscription to a Service after the effective date of any changes means that you agree to the changes"). As a matter of law, Richards' admissions that he received notice of the updated terms and continued to use his email account after the 2018 version took effect proves his assent. *See, e.g.*, *Klein v. Verizon Commc'ns, Inc.*, No. 1:12CV757, 2017 WL 5071306, at *4 (E.D. Va. Aug. 9, 2017) ("By continuing to use the internet services provided by Verizon, Klein manifested his assent to the 2012 modification under the parameters specifically recognized as reflecting acceptance under the terms of his contract. . . . It is well settled that manifesting acceptance by engaging in activity explicitly recognized as such in the governing contract provisions is sufficient to demonstrate assent under Virginia law.").

Richards' assent to the 2018 version deprives this Court of personal jurisdiction, because that version mandates that all disputes "will be brought exclusively in the courts located in the county of New York, New York or the U.S. District Court for the Southern District of New York." ECF 20-2 at 21. Therefore, this Court cannot use the Virginia forum-selection clause from the 2017 version to exercise personal jurisdiction over AOL.

**B. The mere fact that AOL sent millions of users a notice of updated terms is not a basis for specific personal jurisdiction in Virginia.**

Ignoring the mandatory New York forum-selection clause, Richards argues for specific personal jurisdiction in Virginia based on a single allegation.[1] ECF 28 at 16 (citing ECF 1 ¶ 17). He alleges that: "On November 27, 2025 – Thanksgiving Day – Defendant notified Plaintiff and presumably also notified AOL's approximately 30 million users that new Terms of Service and a new Privacy Policy would take effect on January 2, 2026." ECF 1 ¶ 17. But a mass notification email sent to millions of users throughout the country does not come close to showing that AOL purposefully availed itself of conducting business in Virginia. *See ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir. 1997) (holding that conduct focused "generally on customers located throughout the United States" does not show purposeful availment); *see also XMission, LC v. Fluent LLC*, 955 F.3d 833, 847 (10th Cir. 2020) ("Purposeful direction cannot be satisfied if the . . . email sender simply wants as many responses as possible but is indifferent to the physical location of the responder."); *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball,*

[1] Although Richards' opposition brief claims that AOL "entered into individualized contracts with Virginia residents, provided ongoing email services to those residents, stored their private communications, and sent targeted notices about material changes to their accounts," ECF 28 at 16, those supposed facts are neither alleged in the complaint nor supported by evidence. Regardless, these putative facts do not support Richards' theory of "specific personal jurisdiction," *id.*, because Richards' claims do not "arise out of or relate to" these supposed contacts by AOL with the Commonwealth of Virginia, *al-Suyid v. Hifter*, 139 F.4th 368, 377 (4th Cir. 2025).

*Inc.*, 751 F.3d 796, 803 (7th Cir. 2014) ("The fact that Real Action maintains an email list to allow it to shower past customers and other subscribers with company-related emails does not show a relation between the company and Indiana.").

Moreover, Richards does not allege that he read the email notification in Virginia. And even if he had alleged that fact, the mere fortuity of where a plaintiff happens to be located when reading an email is not enough for jurisdiction. *Advanced Tactical*, 751 F.3d at 803 ("As a practical matter, email does not exist in any location at all; it bounces from one server to another, it starts wherever the account-holder is sitting when she clicks the 'send' button, and it winds up wherever the recipient happens to be at that instant. The connection between the place where an email is opened and a lawsuit is entirely fortuitous.").

Without a Virginia forum-selection clause or a basis for showing AOL's purposeful availment in Virginia, this Court cannot exercise personal jurisdiction.

## II. Richards Fails to Address the Lack of Redressability, Which Deprives Him of Standing for the Declaratory Relief He Seeks.

Richards ignores AOL's argument that redressability is lacking for his declaratory relief. In Paragraph E of his Prayer for Relief, ECF 1, Richards asks the Court to "[d]eclare that the new [2026] Terms of Service and Privacy Policy are unconscionable and unenforceable." But that relief—even if granted—will not redress the fact that the 2018 version includes the same right to read emails that Richards deems offensive. *Compare* ECF 13-1 at 3 (allowing AOL to read "the emails you send and receive"), *with* ECF 17-1 at 49 (allowing AOL to read "email content from incoming and outgoing mail"). As discussed above, Richards consented to the 2018 version through his continued use of his AOL account—regardless of whether he clicked the "I Accept" button. *See, e.g.*, *Gillam v. Branch Banking & Tr. Co.*, No. 3:17CV722, 2018 WL 3744019, at *3 (E.D. Va. Aug. 7, 2018) ("They did not need to sign anything where the express terms of the

offer indicated that continued use of the account would constitute acceptance of the terms of the agreement."). Because Richards had already agreed to the 2018 version, which allowed AOL to read his emails, a declaratory judgment invalidating the same provision from the 2026 version will not redress Richards' alleged harm.

There is another reason why redressability is lacking. According to Richards' allegations, AOL has already been "scanning Plaintiff's emails since at least 2019 – and continued scanning through January 7, 2026[.]" ECF 28 at 2. If that is true, Richards does not explain how invalidating the 2026 version of the terms and conditions would cause AOL to cease its alleged email scanning that, according to him, has been ongoing for years.[2]

## III. Richards Cannot Rely on Unpled Facts and Extrinsic Evidence in a Futile Attempt to Demonstrate "Substantial Compliance" with the Dispute Resolution Process.

Richards relies on the statements of his counsel and five documents attached to his opposition brief to supposedly prove that he "substantially complied" with the pre-dispute resolution process. ECF 28 at 17-19; ECF 28-1 through 28-5. There are three problems with his argument.

First, on a motion to dismiss, Richards cannot rely on extrinsic evidence or new facts raised through the statements of counsel. *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) ("Consideration of extrinsic documents by a court during the pleading stage of litigation improperly converts the motion to dismiss into a motion for summary judgment."); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 449 (4th Cir. 2011) ("[S]tatements by counsel that raise new facts constitute matters beyond the pleadings and cannot be considered on a Rule 12(b)(6) motion."). Here, the complaint never mentions the

[2] Alternatively, if AOL has already ceased its scanning of Richards' emails, then Richards' request to invalidate the 2026 version is necessarily moot.

conversations between counsel or the emails and comments attached to Richards' opposition brief. Therefore, the Court cannot consider them on a motion under Fed. R. Civ. P. 12(b)(6).

Second, the conversations and other statements on which Richards relies occurred *after* he had already sued AOL. On December 17, 2025, Richards initiated litigation by suing AOL in the Loudoun County Circuit Court. Yet Richards confusingly relies on a conversation from December 22, and a notice sent on December 31, as supposed compliance with the *pre*-dispute process. Although Richards alleges that he notified the Attorney General of his dispute on November 27, ECF 1 ¶ 21, there is no allegation (or even extrinsic evidence) that AOL was aware of any such complaint. Indeed, when considering only the four corners of Richards' pleading, there is no allegation that AOL was aware of his dispute *at any time* before he filed this lawsuit. *See generally* ECF 1. And even if the Court were to consider Richards' extrinsic evidence, the earliest possible date that AOL was arguably aware of his dispute was December 15—just *two days* before Richards filed suit in Loudoun. Under no circumstances can this be considered "substantial compliance" with the contractual process.[3]

Third, the dispute resolution process would not have been futile. As an initial matter, Richards does not allege futility in his complaint, which prevents the Court from considering that new allegation on a motion to dismiss. Regardless, Richards argues in his opposition brief that "Defendant's conduct demonstrates that no amount of pre-suit negotiation would have resolved this dispute." ECF 28 at 18. That contention makes no sense, given Richards' concession that his dispute was resolved as of January 7, after two weeks of working with AOL (most of which occurred over the holidays and in the midst of a complex transaction that involved the sale of

[3] In any event, Richards fails to cite a single case allowing a plaintiff to avoid contractual dispute resolution procedures through "substantial compliance."

AOL to an Italian company). *Id.* at 3. If Richards had simply notified AOL of his dispute on November 27, instead of waiting nearly three weeks to do so, his concerns could have been resolved well before Christmas.

In sum, there is not a single allegation in Richards' complaint to demonstrate his compliance with the conditions precedent for bringing this lawsuit. *See Dewberry-Goodkind, Inc. v. Edgewood Props., Inc.*, No. 1:10CV118, 2010 WL 11699618, at *3 (E.D. Va. July 23, 2010) (dismissing counterclaim because claimant "fails to allege that it complied with the parties' agreed upon procedures for bringing a claim, as stated in the Terms and Conditions"). And even if the Court considers Richards' extrinsic evidence and statements of counsel, any belated attempt to notify AOL two days before filing suit does not satisfy the contractual requirements.

## IV. Richards' Half-Hearted Attempt to Refute the *Colorado River* Factors Underscores the Abstention Doctrine's Applicability Here.

The Court should reject Richards' arguments under *Colorado River*. First, Richards argues that the Loudoun County case and this case are not parallel because "the federal claims . . . are not pending in state court." ECF 28 at 25. But *Colorado River* abstention does not require an exact identity of claims. *See Baseline Sports, Inc. v. Third Base Sports*, 341 F. Supp. 2d 605, 608 (E.D. Va. 2004) ("[T]he issues need only be substantially similar, not identical.").[4] And even "if the federal [claims] ha[ve] a chance of continuing even after the resolution of the state case, a stay pending the resolution of the state suit is the appropriate disposition in federal court." *Sto Corp. v. Lancaster Homes, Inc.*, 11 F. App'x 182, 189 (4th Cir. 2001).

Second, Richards argues that "the federal claims can only be adjudicated here." ECF 28 at 25. That is incorrect. The United States Supreme Court has "consistently held that state courts

[4] Richards has previously admitted that the Loudoun County action is "parallel," ECF 12 at 3, and that it presents "the same facts and similar claims" as this case, ECF 6-1 ¶ 18.

have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States." *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990). If Richards wants to pursue federal claims in the Loudoun County action, he can simply amend his complaint to add them. *See* Va. Sup. Ct. R. 1:8 ("Leave to amend should be freely granted[.]").

Third, Richards claims that "no proceedings [] occurred in state court before this case was filed." ECF 28 at 25. That is also incorrect. By the time Richards filed this second lawsuit, Judge Snow had already denied his request for an emergency hearing and his motion for reconsideration, and Richards had already appealed Judge Snow's ruling to the Supreme Court of Virginia. *See* ECF 22-1 through 22-5.

Finally, Richards argues that his federal lawsuit was not "reactive." ECF 28 at 25. But he *still* offers no explanation as to why this second lawsuit was necessary when he had already filed what he admits to be a "parallel" state court action, ECF 12 at 3, that asserted "the same facts and similar claims," ECF 6-1 ¶ 18. Considering the timing and circumstances of the two cases, the only explanation is that Richards was disappointed by Judge Snow's denial of his emergency hearing request, and he thought he would have another shot at a quick hearing in this Court. That conduct can only be described as a "reactive" form of procedural fencing.

## V. Richards Improperly Relies on Unpled Facts to Support His Federal Claims, While Failing to Address His Consent to Email Scanning Under the 2018 Version.

Richards does not seriously dispute the speculative nature of his allegations that, "*[u]pon information and belief*, Defendant *may have* already violated [federal law] by [reading] and disclosing Plaintiff's [emails] without [] consent since approximately 2018." ECF 1 ¶¶ 56, 64 (emphasis added). Instead, he contends that his allegation is no longer speculative because, according to him, "Defendant concede[s] that indeed it has been searching Plaintiff's emails since at least 2019." ECF 28 at 19. The problem with this argument is that AOL never made any such

concession, as evidenced by Richards' failure to cite it.[5] Moreover, if Richards truly believes AOL made the supposed admission, the proper procedure is for Richards to file an amended complaint that includes the alleged admission and is subject to Fed. R. Civ. P. 11. Until he does that, his federal claims are not adequately pled.[6]

Putting that issue aside, Richards fails to respond to AOL's argument that Richards consented to email scanning under the 2018 version by continuing to use his email account. ECF 22 at 9-10. As discussed in AOL's opening brief and above, Richards admits that he used his email account after the 2018 version took effect, ECF 3 ¶ 17, which, under the contractual terms and applicable law, manifested his consent to email scanning. *See, e.g.*, *Rader v. Nw. Fed. Credit Union*, No. 1:23CV160, 2024 WL 388097, at *7 (E.D. Va. Feb. 1, 2024) ("Because Plaintiff received sufficient notice and then continued to use her account, Plaintiff is bound by the 2020 Membership Agreement[.]"). Richards' consent through his continued use is a complete defense to his federal claims.[7]

## VI. Richards Does Not Dispute AOL's Explicit Contractual Right to Modify the Terms, Which Is Fatal to His Claim for a Breach of the Implied Covenant.

Under any version, AOL had the explicit contractual right to modify the terms and conditions. ECF 20-1 at 10 ("We may modify this TOS from time to time."); ECF 20-2 ("[W]e may modify the Terms from time to time."); ECF 20-3 ("[W]e may modify the Terms from time

---

[5] Richards betrays his own argument by stating that "Defendant also *implies* it has been searching his emails since 2019." ECF 28 at 22 (emphasis added). Any implication that Richards reads into the briefing is not a binding admission, let alone an allegation from the complaint that can be considered on a motion to dismiss.

[6] If the Court dismisses the federal claims, it should dismiss the entire action for lack of subject matter jurisdiction.

[7] Richards attempts to save his federal claims by arguing in his brief that he "withdrew consent on December 22 and December 31, 2025." ECF 28 at 20. But that fact, even if true, is not alleged in his complaint, *see generally* ECF 1, and therefore cannot be considered on a motion to dismiss.

to time.”). Richards claims that AOL breached the implied covenant of good faith and fair dealing by exercising this explicit contractual right. *See* ECF 1 ¶ 69 (“Defendant breached the implied covenant of good faith and fair dealing by: (a) unilaterally and materially changing the fundamental terms of the parties’ agreement; [and] (b) eliminating the core privacy protections that induced Plaintiff to use and continue using Defendant’s services[.]”). Any unilateral change to the terms, including a change to the privacy features, is *exactly* what AOL had the contractual right to do. Therefore, such modification cannot form the basis for an implied covenant claim. *See, e.g.*, *CSX Transp., Inc. v. Norfolk S. Ry. Co.*, 648 F. Supp. 3d 679, 730 (E.D. Va. 2023) (“[T]he implied covenant of good faith and fair dealing does not apply to activity governed by express contractual terms.”) (quotation marks omitted).

Richards also claims that AOL breached the implied covenant by sending notice of its updated terms on Thanksgiving Day. *See* ECF 1 ¶ 69 (“Defendant breached the implied covenant of good faith and fair dealing by: . . . (c) timing the notice to minimize user awareness[.]”). But even if this allegation could form the basis for an implied covenant claim, it cannot do so under the facts that Richards has pled. Richards admits that he was aware of the notice on the day it was sent, which deprives him of standing to complain about inadequate notice. *Id.* ¶ 21. Moreover, Richards asserts no damages or other injury resulting from the timing of AOL’s notice. *See Ramos v. Wells Fargo Bank, NA*, 289 Va. 321, 323 (2015) (“[A]n essential element in a breach of contract action is that the defendant’s breach of a contractual obligation caused injury or damage to the plaintiff. . . . Accordingly, the plaintiff must allege facts setting forth the injury or damage incurred as a result of defendant’s breach.”) (citation omitted).

Finally, Richards claims that AOL breached the implied covenant by asking Richards to either accept the updated privacy terms or reject them and stop using AOL’s services. *See* ECF

1 ¶ 69 ("Defendant breached the implied covenant of good faith and fair dealing by: . . . (d) structuring the 'choice' to coerce acceptance."). But these were the *only* two possible choices after AOL exercised its right to modify; there was no third option available. Once again, therefore, Richards presents nothing more than his grievance that AOL exercised its express contractual right, which cannot form the basis for an implied covenant claim. *See Albayero v. Wells Fargo Bank, N.A.*, No. 3:11CV201, 2011 WL 4748341, at *6 (E.D. Va. Oct. 5, 2011) (dismissing implied covenant claim because "the actions taken by Defendants merely amounted to an exercise of their contractual rights").

## VII. Richards' Arguments as to Unconscionability Have No Merit.

Richards argues that he "had no meaningful choice" when AOL updated its terms. ECF 28 at 13. But Richards voluntarily chose to give AOL the right to unilaterally update its terms. ECF 20-1 at 10 ("We may modify this TOS from time to time."). Richards does not contend that he was under duress years ago when he agreed to grant AOL this right to modify. At that time, Richards could have simply declined to use AOL's email services and selected a different provider. But he signed up with AOL anyway. Having freely granted AOL the right to modify its terms, Richards cannot now complain that AOL exercised that right.[8]

Richards also argues that the more-than-thirty-day notice period was unfair. ECF 28 at 13. But he does not cite a single case holding that this period of time between notice and a contract modification is procedurally unconscionable. Nor does he allege that more time would have resulted in a different outcome. Without any law or facts in support, this argument carries no weight.

---

[8] In any event, the terms and privacy policy clearly advised Richards that he could have withdrawn his consent to email scanning. ECF 17 at 12-13.

Next, Richards argues that AOL's right to scan emails is substantively unconscionable, meaning that it "creates an inequality so gross that it shocks the conscience." *Flint Hill Sch. v. McIntosh*, No. 181678, 2020 WL 33258, at *6 (Va. Jan. 2, 2020). But Richards does not explain why the value of his ability to continue using his AOL email account is any less than the value of AOL's right to scan his emails.

Finally, Richards hand-waves at the fact that "[m]illions of users may have accepted [the updated] terms[.]" ECF 28 at 22-23. But that fact defeats his claim. The applicable test is whether the contract at issue is "one that no man in his senses and not under a delusion would make, on the one hand, and as no fair man would accept, on the other." *Flint Hill*, 2020 WL 33258 at *5. If millions of other users allowed AOL to scan their emails in exchange for continued use of their accounts, Richards cannot seriously allege that "no fair man" would accept the updated terms.

## VIII. Richards Cannot Use His Opposition Brief to Add Allegations to His VCPA Claim in a Futile Effort to Satisfy Fed. R. Civ. P. 9(b).

In response to AOL's argument that Richards failed to identify any VCPA provisions in his complaint, Richards uses his opposition brief to allege that AOL violated Va. Code §§ 59.1-200(A)(5), (6), and (14). ECF 28 at 23-24. Richards also uses his opposition brief to allege that "the FAQs stat[ed] no opt-out existed" and that AOL "failed to disclose the privacy toggles despite repeated direct inquiry on December 22, January 2, and January 5."[9] ECF 28 at 24. None

[9] Citing to a Virginia circuit court case, Richards argues that the federal pleading standard for fraud does not apply. ECF 28 at 24 (citing *West v. Christopher Consultants*, No. CL19002447, 2020 WL 10458184 (Loudoun June 10, 2020)). However, the pleading standard is governed by the Federal Rules of Civil Procedure, not state court requirements. Applying that standard, the federal courts have held that a "VCPA claim [is] governed by the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure." *Wynn's Extended Care, Inc. v. Bradley*, 619 F. App'x 216, 220 (4th Cir. 2015); *Reitz v. CVY of Alexandria, LLC*, No. 1:23CV959, 2025 WL 895204, at *5 (E.D. Va. Mar. 24, 2025) ("As a claim sounding in fraud, a VCPA claim must

of this is contained in Richards' complaint, and thus cannot be considered by the Court. *See, e.g.*, *Nedrick v. Southside Reg'l Med. Ctr.*, No. 3:19CV202, 2020 WL 534052, at *3 n.7 (E.D. Va. Feb. 3, 2020).

**CONCLUSION**

For the reasons discussed, the Court should grant AOL's motion and dismiss this action.

also satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b)."). In his pleading, Richards accuses AOL of violating the VCPA through "fraudulent acts." ECF 1 ¶ 79. Moreover, the three VCPA provisions cited in Richards' opposition brief all sound in fraud. *See* Va. Code §§ 59.1-200(A)(5), (6), and (14). Because Richards is "alleging fraud," Fed. R. Civ. P. 9(b) requires him to "state with particularity the circumstances constituting fraud."

Dated: January 20, 2026

Respectfully submitted,

**AOL MEDIA LLC**
*By Counsel*

*/s/ Brooks H. Spears*

Brooks H. Spears (VSB No. 86391)
Zachary J. Poretz (VSB No. 99508)
**MCGUIREWOODS LLP**
1750 Tysons Boulevard, Suite 1800
Tysons Corner, VA 22102
T: (703) 712-5132
F: (703) 712-5252
bspears@mcguirewoods.com
zporetz@mcguirewoods.com

## CERTIFICATE OF SERVICE

I certify that, on January 20, 2026, I caused the foregoing to be served via the Court's electronic filing system, which will send notice to all counsel of record.

*/s/ Brooks H. Spears*