**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| THOMAS RICHARDS,<br><br>*Plaintiff*,<br><br>v.<br><br>AOL MEDIA LLC,<br><br>*Defendant*. | Case No: 1:25CV2448 (PTG/IDD) |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION OR, ALTERNATIVELY, TO TRANSFER VENUE**

Defendant AOL Media LLC ("AOL"), pursuant to L. Civ. R. 7(F), submits this reply brief in support of its motion to compel arbitration or, alternatively, to transfer venue of the action filed by Plaintiff Thomas Richards ("Richards").

**INTRODUCTION**

Richards cannot pick-and-choose certain provisions within different versions of the terms and conditions to benefit his inconsistent positions in this litigation. For instance, Richards cannot rely on the Virginia forum-selection clause from the 2017 version, which does not include an arbitration opt-out, while simultaneously relying on the arbitration opt-out clause from the 2026 version, which designates New York as the exclusive venue. Nor can Richards claim that the 2026 version is unenforceable while, at the same time, attempting to take advantage of that version's arbitration opt-out. If Richards can opt-out of the 2026 version, then that same version is necessarily enforceable, which means that Richards cannot obtain the relief he seeks and that this action must be transferred to New York.

Conspicuously, Richards does not address these issues, as raised in AOL's motion. Instead, he obfuscates by highlighting a factual dispute about whether he agreed to the 2018 version and by arguing that a portion of the 2026 version is ambiguous. Neither of those issues matters to the outcome of AOL's motion. Even if Richards did not agree to the 2018 version, both the 2017 version and the 2026 version also include arbitration clauses. And even if the 2026 version contains an ambiguity, that ambiguity is already bound up in Richards' core contention that the 2026 version is unenforceable.

At bottom, Richards must select which version of the terms and conditions applies to his claims, and that selection must be binding. If Richards chooses the 2017 or 2018 version, then there is no opt-out available to him. If he chooses the more recent version, then the case must be transferred to New York.

## ARGUMENT

### I. Both the 2017 and 2018 Versions Require Arbitration, Which Renders the Parties' Factual Dispute Irrelevant.

According to Richards, the Court "must resolve" the factual dispute about whether he agreed to the 2018 version before it can decide AOL's motion to compel arbitration. ECF 28 at 15. That is incorrect. For purposes of this motion, it is irrelevant whether Richards agreed to the 2018 version. That is because *both* the 2017 and 2018 versions include an arbitration clause. Therefore, even assuming Richards did not consent to the 2018 version, he is still bound by the 2017 version, which provides that: "**All disputes between you and Oath will be resolved by binding arbitration. You thus give up your right to litigate disputes with us in court . . . . Disputes will be decided by a neutral arbitrator and not a judge or jury**." ECF 20-1 at 2; *see also id.* at 9 ("You agree that arbitration . . . will be your sole and exclusive remedy to resolve

any dispute with us.”). Given this mandatory arbitration provision in the 2017 version, the Court need not decide whether Richards agreed to the 2018 version.

If the Court is inclined to decide whether Richards consented to the 2018 version, it must decide that issue in favor of AOL. On AOL’s side of the evidentiary ledger, it has submitted two declarations with screenshots of digital business records that provide detailed facts showing Richards’ acceptance of the 2018 version. Chris Brunschweiger explained that AOL’s account management tool (“AMT”) records show that Richards “affirmatively agreed” to the 2018 version on April 11, 2019, at 2:58 p.m. UTC time. ECF 17-1 ¶ 18. The screenshot of those AMT records is also included:

| | |
|---|---|
| **UTOS Agreed** | 1970-01-01T00:00:00 +00:00 UTC aol_freereg_1.5(us)<br>2019-04-11T14:58:05 +00:00 UTC oath_freereg(us) |

*Id.* Mr. Brunschweiger stated, under penalty of perjury, that: “Based on the AMT records, I can state with certainty that the person with access to the Account agreed to the [2018 version].” *Id.* ¶ 20.

But that is not all. AOL also submitted the declaration of Robert Gurwin, who explained that the user of Richards’ account “affirmatively consented to the [2018 version] by clicking a button with the words ‘I Accept’ in the consent flow[.]” ECF 17-2 ¶ 12. The screenshots of the consent flow, which are also included, show that the 2018 version was available via a hyperlink. Moreover, the summary of the updated terms specifically highlighted the arbitration provision as one of the “Key Points” that Richards would be agreeing to:

**Key Points in Terms of Service**

- **We've updated our mutual arbitration clause.**

  Hopefully, disputes will never be an issue, but in the case of one, this allows a third-party arbitrator to help us resolve them. We've also added a class action waiver. These provisions are an important part of our relationship with you, so please read them carefully.

*Id.* Based on these records, Mr. Gurwin was able to "state with certainty that Mr. Richards or another person with access to his Account clicked the 'I Accept' button shown above." *Id.* ¶ 13.

On Richards' side of the evidentiary ledger is nothing more than a general denial of his acceptance. ECF 3 ¶ 17. Tellingly, Richards offers *no* explanation of, or rebuttal to, the Brunschweiger and Gurwin declarations or the AMT records of his acceptance. Nor does he challenge the authenticity of the digital evidence. Instead, Richards' only argument is that AOL's declarants lack "personal knowledge" that Richards actually clicked the "I Accept" button. ECF 28 at 8. But that is no argument at all, because "a party may offer any relevant, admissible evidence, including circumstantial, to establish the existence of an [arbitration] agreement." *Courtright v. Epic Games, Inc.*, 766 F. Supp. 3d 873, 895 (W.D. Mo. 2025).

In situations involving similar evidence, courts routinely find assent to the terms and conditions, while refusing to credit general denials like the one made by Richards. *See, e.g.*, *Gordon v. Zeroed-In Tech., LLC*, No. 23-3284-BAH, 2025 WL 941365, at *10-12 (D. Md. Mar. 26, 2025) (finding assent where party seeking to enforce arbitration provided "abundant digital evidence," including "electronic records that reveal each of the Application Plaintiffs checked the 'I agree' box"); *Bracamontes v. United Rentals, Inc.*, No. 2:23CV2697, 2024 WL 1884052, at *4 (E.D. Cal. Apr. 30, 2024) ("It is not sufficient for the party opposing arbitration to utter general denials of the facts on which the right to arbitration depends.") (brackets omitted); *Melo v. Zumper, Inc.*, 439 F. Supp. 3d 683, 699 (E.D. Va. 2020) ("According to Zumper's records,

Plaintiff clicked the 'Create Account' button at 6:55 p.m. (EDT) on August 28, 2017."); *Bassett v. Elec. Arts, Inc.*, 93 F. Supp. 3d 95, 107-08 (E.D.N.Y. 2015) (enforcing arbitration because moving party's "Account Management Tool" for the relevant email account "reflects that Plaintiff was presented with and accepted both the current version and the [later] version of EA's Terms of Service"). This Court should do the same.

Even if there is a material dispute about whether Richards clicked the "I Accept" button, it is undisputed that Richards manifested his assent to the 2018 version through his continued use of his AOL email account. Richards states, under penalty of perjury, that "I received multiple notices from AOL beginning in or around 2018" and that "I have continued to use my AOL email account from 2018 to the present[.]" ECF 3 ¶ 17. The 2018 version provides that, "[b]y using the Services, you agree to these terms," ECF 20-2 at 2, and that "your continued use of or subscription to a Service after the effective date of any modifications to the Terms [] means that you agree to the Terms as modified," *id.* at 14; *see also* ECF 20-1 at 10 (2017 version providing that "[y]our continued use of or subscription to a Service after the effective date of any changes means that you agree to the changes"). Thus, Richards' admissions that he received notice of the updated terms and continued to use his email account after the 2018 version took effect proves his assent. *See, e.g.*, *Klein v. Verizon Commc'ns, Inc.*, No. 1:12CV757, 2017 WL 5071306, at *4 (E.D. Va. Aug. 9, 2017); *Rader v. Nw. Fed. Credit Union*, No. 1:23CV160, 2024 WL 388097, at *7 (E.D. Va. Feb. 1, 2024); *Gillam v. Branch Banking & Tr. Co.*, No. 3:17CV722, 2018 WL 3744019, at *3 (E.D. Va. Aug. 7, 2018).

## II. Richards' Reliance on the Opt-Out Clause Necessarily Assumes the Enforceability of the 2026 Version, Which Defeats His Claim.

Richards seeks to enforce the 2026 opt-out provision. ECF 28 at 7 ("Plaintiff opted out of arbitration under those [2026] Terms."). By seeking to enforce the 2026 version, Richards

defeats his own claim that "the [2026] Terms of Service and Privacy Policy are unconscionable and unenforceable." *Wachovia Bank, Nat'l Ass'n v. Schmidt*, 445 F.3d 762, 769 (4th Cir. 2006) ("[I]t is unfair for a party to rely on a contract when it works to its advantage, and repudiate it when it works to its disadvantage.") (quotation marks and brackets omitted). If the 2026 version is unenforceable, as Richards claims, then he cannot rely on that version's opt-out provision.[1] On the other hand, if the Court enforces the 2026 version by allowing Richards to opt-out of arbitration, then it cannot enter a judgment declaring the 2026 version to be unenforceable.

## III. Richards' Reliance on the 2017 Version's Virginia Forum-Selection Clause Precludes Him from Relying on the 2026 Version's Opt-Out Clause.

There is another reason why Richards cannot rely on the 2026 version's opt-out clause: he seeks to enforce the 2017 version's Virginia forum-selection clause. According to Richards, "[t]his Court has personal jurisdiction over Defendant because Defendant's Terms of Service provide that users consent to exclusive jurisdiction in Virginia state and federal courts[.]" ECF 1 ¶ 5. Of the three versions (2017, 2018, and 2026), only the 2017 version designates Virginia as the exclusive venue. ECF 20-1 at 10. The other two versions designate New York. ECF 20-2 at 21; ECF 20-3 at 21. Richards cannot take advantage of the 2017 version's Virginia forum-selection clause while at the same time arguing that its arbitration clause, which does not include an opt-out provision, is inapplicable to his claims. *Power Sys. & Controls, Inc. v. Schneider Elec. USA, Inc.*, No. 3:10CV137, 2010 WL 2384537, at *2 (E.D. Va. June 9, 2010) ("[W]here a party is seeking a direct benefit from a contract, it will be estopped from avoiding the part of the contract requiring arbitration.").

---

[1] Nor can he rely on the language from the opt-out provision that, according to him, renders earlier arbitration agreements inapplicable to his claims.

**IV. Richards Completely Fails to Address the 2026 Version's Mandatory Forum-Selection Clause That Requires Transfer to the Southern District of New York.**

Richards utterly ignores AOL's argument that enforcement of the 2026 version's opt-out provision also requires the enforcement of its mandatory forum-selection clause. The forum-selection clause provides that, "if for any reason a Dispute proceeds in court rather than through arbitration, all such Disputes (regardless of theory) arising out of or relating to these Terms, or the relationship between you and us, will be brought exclusively in the courts located in the county of New York, New York or the U.S. District Court for the Southern District of New York." ECF 20-3 at 21. Richards cannot obtain the benefit of the 2026 version's arbitration opt-out while at the same time avoiding that version's designation of New York as the exclusive venue for litigation.[2] *See Davis v. E. H. Yachts, LLC*, No. 2:05CV62, 2006 WL 8438340, at *7 (E.D.N.C. Aug. 28, 2006) ("The Fourth Circuit has held that a litigant may be estopped from repudiating a forum selection clause contained in a contract to which he is not formally a party where he seeks or has sought to receive some direct benefit under the contract.") (citing *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000)).

**V. The Arbitration Clause Is Not Illusory.**

Richards argues that the 2026 version's arbitration clause is illusory based on cases that applied Maryland and Virginia contract law. *See Johnson v. Continental Fin. Co., LLC*, 131 F.4th 169 (4th Cir. 2025), *petition for cert. filed*, *Continental Fin. Co., LLC v. Johnson*, No. 25-34 (U.S. July 10, 2025) (applying Maryland contract law);[3] *Kiser v. Truist Fin. Corp.*, 796 F. Supp. 3d 207

---

[2] This conclusion is the same regardless of Richards' argument that the opt-out language is ambiguous.

[3] The Fourth Circuit went out of its way to cabin its decision to cases governed by Maryland contract law. *See Johnson*, 131 F.4th at 181 ("[W]e stress that our holding reflects only the judgment of the Maryland courts. Contract formation is a question of state common law. . . .

(E.D. Va. 2025) (applying Virginia contract law). Here, however, New York contract law applies when interpreting the terms and conditions. ECF 20-3 at 21.

Under New York law, an arbitration provision is not illusory merely because the applicable terms and conditions grant a service provider the unilateral right to modify. *Bassett*, 93 F. Supp. 3d at 106. Rather, "the implied covenant of good faith ordinarily works to save provisions allowing *unilateral* modifications—even retroactive ones—from being considered illusory, since the covenant bars the party with unilateral power to modify from using that power capriciously." *Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273, 295 (S.D.N.Y. 2025) (emphasis in original). Thus, New York courts examine "whether [the service provider's] behavior was reasonable in context" and consistent with "its duty of good faith and fair dealing, given the nature of the contract." *Bassett*, 93 F. Supp. 3d at 107.

AOL was required to provide notice before making "material modifications," ECF 20-3 at 13, and such notice was required to be in the form of "email, regular mail, text message or SMS, MMS, push notification or in-app message, postings on the Services, telephone, or other reasonable means," *id.* at 6. Richards concedes he received notice about the relevant modifications more than thirty days before they took effect. ECF 1 ¶ 17. Under New York law, this is more than reasonable under the circumstances to satisfy AOL's obligation of good faith and fair dealing. *See Bassett*, 93 F. Supp. 3d at 107-08.

But even applying Virginia contract law, as in *Kiser*, the arbitration clause is not illusory, because AOL was required to provide reasonable notice. In *Kiser*, Truist's terms and conditions provided as follows: "*Unless otherwise prohibited or required by applicable law or regulation,*

---

Other states are entitled to adopt or reject Maryland's approach. The beauty of federalism lies in states being free to chart their own course.").

*the Bank may change from time to time other provisions of these rules and regulations with or without notice*." 796 F. Supp. 3d at 237 (emphasis in original). Judge Krask repeatedly emphasized that Truist was not required to provide notice. *Id.* ("The plain language of the change-in-terms clause permits Truist to unilaterally modify the arbitration agreement *without providing notice*.") (emphasis in original); *id.* at 238 (observing that "the account agreement does *not* require Truist to give notice of unilateral modifications") (emphasis in original). Unlike Truist, AOL was required to provide notice of modifications. ECF 20-3 at 13 ("We will provide notice . . . of material modifications."). And, as discussed above, the notice was required to be provided by "reasonable means." *Id.* at 6. Thus, *Kiser* is distinguishable.

**CONCLUSION**

For the reasons discussed, the Court should grant AOL's motion and compel arbitration or, alternatively, transfer this action to the United States District Court for the Southern District of New York.

Dated: January 20, 2026

Respectfully submitted,

**AOL MEDIA LLC**
*By Counsel*

*/s/ Brooks H. Spears*

Brooks H. Spears (VSB No. 86391)
Zachary J. Poretz (VSB No. 99508)
**MCGUIREWOODS LLP**
1750 Tysons Boulevard, Suite 1800
Tysons Corner, VA 22102
T: (703) 712-5132
F: (703) 712-5252
bspears@mcguirewoods.com
zporetz@mcguirewoods.com

**CERTIFICATE OF SERVICE**

I certify that, on January 20, 2026, I caused the foregoing to be served via the Court's electronic filing system, which will send notice to all counsel of record.

*/s/ Brooks H. Spears*