UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

THOMAS RICHARDS,

        Plaintiff,

v.

                              Case No. 1:25-cv-02448 (PTG/IDD)

AOL MEDIA LLC,

        Defendant.

## PLAINTIFF'S SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

      Plaintiff Thomas Richards, by counsel, respectfully submits this supplemental brief in opposition to Defendant's Motion to Compel Arbitration, responding to arguments raised in Defendant's January 20, 2026 Reply Brief (ECF 31).

**INTRODUCTION**

      Defendant's reply brief attempts to force Plaintiff into an impossible choice: accept the 2017 terms (with mandatory arbitration) or accept the 2026 terms (with a New York forum). But this framing ignores three dispositive facts. First, Defendant took the position in Loudoun County Circuit Court that it "is not a party" to the 2017 terms -- Defendant cannot now enforce those same terms' arbitration clause. Second, the 2026 terms expressly provide that "any prior existing agreement to arbitrate disputes under a prior version of the Arbitration Agreement will not apply to claims not yet filed" -- this language releases Plaintiff from any prior arbitration clause regardless of which version previously governed. Third, the AMT timestamp evidence Defendant relies upon is unreliable, showing two timestamps from two different database systems, including a January 1, 1970 Unix epoch error value that indicates database migration artifacts rather than actual user consent.

**ARGUMENT**

**I. Defendant's Judicial Admission Precludes Enforcement of the 2017 Arbitration Clause.**

In the parallel Loudoun County Circuit Court proceeding, Defendant filed a Demurrer arguing that AOL Media LLC "is not a party" to the 2017 Terms of Service. Defendant cannot take inconsistent positions in two courts -- disclaiming the 2017 terms in state court while simultaneously seeking to enforce those same terms' arbitration clause in federal court.

Defendant has taken directly contradictory positions in two courts. In Loudoun County Circuit Court, Defendant argued in its demurrer that AOL Media LLC "is not a party" to the 2017 Terms of Service. Here, Defendant argues that Plaintiff is bound by the 2017 Terms' arbitration clause. This Court may take judicial notice of Defendant's Loudoun County pleading. See Fed. R. Evid. 201. Even if formal judicial estoppel does not yet apply, the Court should view with skepticism Defendant's attempt to enforce a contract it has disclaimed in another forum.

**II. The "Claims Not Yet Filed" Language Releases All Prior Arbitration Agreements.**

Defendant argues that Plaintiff must "choose" which version of the terms applies. ECF 31 at 2. But the 2026 terms contain an express release that eliminates this supposed choice. Section 14(a)(ii).9 provides:

> *"If you opt out of the Arbitration Agreement, you may exercise your right to a trial by jury or judge, as permitted by applicable law, but any prior existing agreement to arbitrate disputes under a prior version of the Arbitration Agreement will not apply to claims not yet filed."*

This language operates as a release. Plaintiff opted out on December 15, 2025. Plaintiff's claims were filed on December 17, 2025 (state court) and December 23, 2025 (federal court). At the time of the opt-out, Plaintiff's claims were "not yet filed." Under the plain language of the 2026 terms, "any prior existing agreement to arbitrate" -- whether from the 2017 or 2018 terms -- "will not apply" to Plaintiff's claims.

Defendant drafted this language. Defendant chose to include an express release of prior arbitration agreements for claims not yet filed. Defendant cannot now argue that its own language should be ignored.

### III. Enforcing the Opt-Out Provision Does Not Require Accepting the Entire 2026 Terms.

Defendant argues that Plaintiff cannot claim the 2026 terms are unconscionable while relying on the opt-out provision. ECF 31 at 5-6. This argument conflates two distinct issues.

Plaintiff's unconscionability claim targets the email scanning provisions and Defendant's concealment of the toggle mechanism -- not the arbitration opt-out provision. Contract provisions are severable. A court may enforce valid provisions while declining to enforce unconscionable ones, provided the unenforceable portion does not go to the "essence" of the agreement. See *In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274, 292-93 (4th Cir. 2007) (when some provisions of an arbitration agreement are unenforceable, "the court must determine whether the unenforceable provisions are severable"); *Beckley Oncology Assocs. v. Abumasmah*, 993 F.3d 261, 266 (4th Cir. 2021) (unenforceable provisions severable "if they don't go to the essence of the contract"); Restatement (Second) of Contracts § 184(1). The arbitration opt-out provision is not the unconscionable part of the 2026 terms and does not go to the essence of the agreement -- the concealed email scanning provisions are an entirely separate subject matter.

Moreover, the opt-out provision itself is not unconscionable -- it benefits users by providing an escape from mandatory arbitration. It would be perverse to hold that Defendant can include an opt-out provision and then argue that any user who exercises it has thereby validated all other provisions of the contract, no matter how unconscionable.

### IV. "Continued Use" Under Active Protest Is Not Consent.

Defendant argues that Plaintiff consented to the 2018 terms through "continued use" of his email account. ECF 31 at 5. This argument fails for multiple reasons.

First, the "continued use" doctrine requires reasonable notice and a meaningful opportunity to accept or reject modified terms. See *Kiser v. Truist Fin. Corp.*, 796 F. Supp. 3d 207 (E.D. Va. 2025). Virginia law provides that modifications to contracts involving successive performances are enforceable only if the procedure for modification "reasonably notifies the other party of the change" and "allows the party to terminate the contract if the modification is unacceptable." Va. Code Ann. § 59.1-503.4. Here, Defendant's modification procedure failed both requirements -- it sent notice on Thanksgiving Day with a holiday-shortened response

window, concealed the existence of privacy toggles that would have allowed users to reject email scanning while continuing service, and falsely implied that the only option was to "close your AOL account."

Second, Defendant's own Privacy Policy undermines the "continued use" argument. The Policy expressly provides that users may "withdraw consent at any time" and "still be able to enjoy our Services." ECF 17 at 12. If Defendant's own terms contemplate that users can withdraw consent yet continue using the service, then continued use cannot logically constitute consent.

Third, Plaintiff did not silently acquiesce -- he actively protested at every turn. Plaintiff filed a consumer complaint with the Virginia Attorney General on November 27, 2025. Plaintiff filed suit in Loudoun County Circuit Court on December 17, 2025. Plaintiff's counsel communicated objections to Defendant's counsel on December 22, 2025. Plaintiff sent formal written notice withdrawing consent on December 31, 2025. Plaintiff filed this federal action on December 23, 2025. Throughout this period, Plaintiff consistently and unambiguously objected to Defendant's terms. Under these circumstances, Defendant cannot credibly claim that Plaintiff's continued access to his own email account -- which contains years of personal and professional correspondence -- constitutes voluntary acceptance of terms he was actively litigating against.

**V. The AMT Timestamp Evidence Is Unreliable and Does Not Establish Consent.**

Defendant relies on Account Management Tool ("AMT") records to claim that Plaintiff accepted the 2018 terms on April 11, 2019. ECF 31 at 3-4. But the AMT screenshot reveals critical reliability problems that Defendant's declarants cannot explain.

The screenshot shows TWO timestamps in the "UTOS Agreed" field:

(1) "1970-01-01T00:00:00 +00:00 UTC aol_freereg_1.5(us)"

(2) "2019-04-11T14:58:05 +00:00 UTC oath_freereg(us)"

The first timestamp -- January 1, 1970 at 00:00:00 UTC -- is the "Unix epoch," the starting point for Unix time measurement. In database systems, a January 1, 1970 timestamp is a

well-known indicator of NULL values, missing data, or system errors. It does not represent an actual user action. The presence of this error timestamp calls into question the reliability of the entire AMT system.

Moreover, the two timestamps are labeled with different system identifiers: "aol_freereg_1.5(us)" and "oath_freereg(us)." These labels indicate that the timestamps came from two different database systems -- AOL's legacy "free registration" system (version 1.5) and Oath's new "free registration" system. In February 2018, AOL migrated its entire infrastructure from legacy AOL systems to Yahoo/Oath infrastructure. The presence of timestamps from two different systems suggests that these entries were auto-generated during the database migration, not created by actual user consent events.

Defendant's declarant, Chris Brunschweiger, is an "associate customer care specialist" -- not a database engineer, software developer, or technical expert. ECF 17-1. Mr. Brunschweiger does not explain: (1) why there are two timestamps in the same field; (2) what the January 1, 1970 timestamp represents; (3) whether timestamps can be auto-generated during database migrations; (4) what the different system identifiers mean; or (5) how the AMT technically records user consent. Mr. Brunschweiger simply concludes that "the person with access to the Account agreed" -- a legal conclusion, not testimony based on technical knowledge of how the system operates.

The AMT records show neither: (a) that Plaintiff personally clicked "I Accept"; (b) the IP address from which any purported acceptance originated; (c) the device used; (d) browser information; nor (e) any other metadata establishing that Plaintiff -- rather than an automated database migration process -- generated the April 2019 timestamp.

**VI. Virginia Law Governs Contract Formation.**

Defendant argues that New York law applies and therefore the arbitration clause is not illusory under *Bassett v. Electronic Arts, Inc*. ECF 31 at 7-8. This argument fails because contract formation is governed by the law of the state where the contract was formed, not by a choice-of-law provision within the disputed contract.

The threshold question before this Court is whether any valid arbitration agreement exists. That question is for the Court, not an arbitrator. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010). And the existence of an agreement is determined by state contract law. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). A choice-of-law provision within a contract cannot govern the question of whether that contract was validly formed -- that would be circular reasoning.

Plaintiff is a Virginia resident. Plaintiff received notices in Virginia. Any alleged "acceptance" occurred in Virginia. Virginia law governs whether Plaintiff formed a valid agreement with Defendant. Under Virginia law, an arbitration agreement is illusory where the defendant retains unilateral power to modify its terms without meaningful limitation. Kiser v. Truist Fin. Corp., 796 F. Supp. 3d 207 (E.D. Va. 2025); see also Johnson v. Cont'l Fin. Co., LLC, 131 F.4th 169 (4th Cir. 2025) (applying same principle under Maryland law).

### VII. The Forum Selection Issue Is Separate from Arbitration.

Defendant argues that if Plaintiff relies on the 2026 opt-out, the case must be transferred to New York. ECF 31 at 7. This conflates two distinct inquiries.

Whether to compel arbitration is governed by the Federal Arbitration Act and requires the Court to determine whether a valid arbitration agreement exists. Whether to transfer venue is governed by 28 U.S.C. § 1404(a) and requires the Court to balance convenience and the interests of justice. These are sequential questions. The Court should first determine whether arbitration is required. If the Court denies arbitration, it may then address transfer as a separate motion.

Moreover, the forum selection clause in the 2026 terms is subject to the same unconscionability analysis as the other provisions. Under Virginia law, a forum selection clause in a contract of adhesion may be unenforceable where there is both procedural unconscionability -- unequal bargaining power and lack of meaningful choice -- and substantive unconscionability -- terms unreasonably favorable to the drafting party. Here, the same factors that render the email scanning provisions unconscionable -- the Thanksgiving notice, the concealed opt-out mechanism, the "close your account" ultimatum -- also render the New York forum selection

clause unconscionable. Plaintiff, a Virginia resident, should not be forced to litigate in New York based on terms he received on a holiday weekend with no meaningful opportunity to reject.

## VIII. Defendant's Notice Was Not Reasonable Under Any Standard.

Defendant argues that even under New York's "good faith" standard, its notice was reasonable. ECF 31 at 8. The facts demonstrate otherwise.

Defendant sent notice of material changes on Thanksgiving Day, November 27, 2025, with a January 2, 2026 effective date -- a 36-day window spanning two major holidays. Defendant's FAQs stated that users who did not agree must "close your AOL account," suggesting there was no way to opt out of email scanning while continuing to use the service. Defendant concealed the existence of privacy toggles until January 7, 2026 -- after both lawsuits were filed. Defendant's own counsel admitted he worked hard to obtain information about the toggles from his client. ECF 17-3. And Defendant continued scanning Plaintiff's emails through January 7, 2026, despite Plaintiff's explicit withdrawal of consent on December 22 and December 31, 2025.

This is not good faith notice. This is a pattern of concealment designed to prevent users from exercising their rights. Under any legal standard -- Virginia, New York, or federal common law -- Defendant's conduct fails.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion to Compel Arbitration.

Respectfully submitted,

THOMAS RICHARDS
By Counsel

/s/ Lisa Weingarten Richards
Lisa Weingarten Richards (VSB No. 96671)
LWR LAW OFFICES
3060 Williams Dr., Suite 300 #510
Fairfax, Virginia 22031

Telephone: (202) 981-2059
Email: LWR@LWRLawOffices.com
Counsel for Plaintiff

Dated: January 23, 2026

## CERTIFICATE OF SERVICE

      I hereby certify that on January 23, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                          /s/ Lisa Weingarten Richards
                                          Lisa Weingarten Richards